LI, Meng Di; Yang, Hai Hang; Zheng, De Sheng; Zhou, Hai Feng, Petitioners,

v.

Joseph R. GREENE, District Director, U.S. Immigration & Naturalization Service, Respondent.

CHEN, Hang Sheng, Petitioner,

v.

Joseph R. GREENE, District Director, Respondent.

Civ. A. Nos. 91–M–469, 91–M–569.

United States District Court, D. Colorado.

June 19, 1991.

Woon Ki Lau, Denver, Colo., for petitioners.

James W. Winchester, U.S. Atty., Denver, Colo., for respondent.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The five petitioners are Chinese nationals who have applied for political asylum in the United States. These five aliens are currently in detention in the INS Detention Center in Aurora, Colorado. All have requested parole pending a final resolution of their status. The district director of the INS, Joseph Greene, has denied the parole requests.

■ The petitioners are legally classified as "excludable." An excludable alien is one who is physically present in the United States, without making a legal entry. *Shaugnessy v. United States ex rel. Mezei,* 345 U.S. 206, 215, 73 S.Ct. 625, 630, 97 L.Ed. 956 (1953). The petitioners are entitled to an exclusion hearing and to have their asylum applications considered by the INS. *See* 8 CFR § 236.2, 236.3(1)(a) & (2). They may also request parole from detention while awaiting a final decision. *See* 8 CFR § 212.5. These petitioners challenged the denial of their requests for parole by seeking a Writ of Habeas Corpus.

Hang Sheng Chen entered Nepal on June 25, 1989 by surreptitiously crossing the border from China. Asylum Application, Administrative Record (A.R.) 254. On November 20, 1990, Mr. Chen arrived at the Brooklyn airport in New York City, New York, traveling from Nepal, and attempted to enter the United States with a fraudulent passport. A.R. 283. When questioned by INS officials, Mr. Chen admitted his identity and asked for political asylum. Mr. Chen was taken into custody and sent to the Detention Center in Aurora, Colorado.

An attorney for Mr. Chen requested, by letter dated November 30, 1990, that Chen and three other aliens, not petitioners in this action, be released on bond, or paroled under 8 CFR 212.5(a)(2)(v). A.R. 268. The district director denied both the request for parole and the request for release on bond by letter dated December 20, 1990, stating: "Your request for parole is hereby denied. Your request for their release under bond is also denied as it is not the policy of this district to release under bond any alien under exclusion procedures, except under emergent situations." A.R. 250.

Chen's lawyer requested reconsideration, by letter dated December 14, 1990 [1]. A.R. 262. The letter called attention to the failure of the district director to state how the public interest would be served by the alien's continued detention as required by 8 CFR § 212.5(a)(2)(v). A.R. 262–63. The district director simply repeated his denial of parole.

On January 19, 1991, Meng Di Li, entered the United States at Anchorage, Alaska without a visa. Meng Di Li left China for Bolivia in December, 1989 and resided in Bolivia until January, 1991. Asylum Application, A.R. 82. Mr. Li's passport appears to indicate that he was granted two year temporary residence status in Bolivia. A.R. 100. Meng Di Li reached Alaska via Sao Paulo, Brazil and Madrid, Spain. In Spain, he boarded a plane destined for Tokyo, Japan and Shang Hai, China, with a refueling stop in Anchorage. A.R. 92, 120. When he arrived in Anchorage, he orally requested political asylum. A.R. 85.

The remaining three petitioners in Civil Action 91–M–469 arrived in Anchorage from Bolivia on January 24, 1991. De Sheng Zheng, Hai Feng Zhou and Hai Hang Yang left China for Bolivia in May 1989, October, 1989, and December, 1990, respectively. These petitioners arrived in Alaska via the same circuitous route as Meng Di Li, and orally requested political asylum in Anchorage. The passports of Hai Feng Zhou and Hai Hang Yang appear to indicate that they were granted two year temporary residence status in Bolivia. A.R. 231, 179.

The petitioners in 91–M–469 were sent to Denver and taken to the Detention Center in Aurora. On March 5, each of these petitioners completed applications for political asylum. On March 11, an attorney acting on behalf of all of them requested parole in a single letter. A.R. 13. The district director denied this request, also in a single letter, on March 21, 1991. A.R. 1.

After the petitions were filed, the district director requested an opportunity to reconsider the parole requests. This court granted that request. Mr. Greene then sent five nearly identical letters, dated April 24, 1991, to each of the petitioners, restating his decision to deny parole.

The issue is whether the district director's denials of the petitioners' requests for parole were facially legitimate and bona fide decisions. The Supreme Court has considered the standard for judicial review of an INS decision to exclude an alien under 8 U.S.C. § 1182(d)(3)(A) and 8 U.S.C. § 1182(a)(28)(D) and held that when the INS excludes the alien "on the basis of a facially legitimate and bona fide reason, the courts will [not] look behind the exercise of that discretion...." *Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972). Four Circuit Courts of Appeals have applied this standard to the denial of requests for parole of excludable aliens. *See Mason v. Brooks*, 862 F.2d 190, 194 (9th Cir.1988); *Amanullah v. Nelson*, 811 F.2d 1 (1st Cir.1987); *Garcia–Mir v. Smith*, 766 F.2d 1478, 1485 (11th Cir.1985), *cert. denied* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986); *Bertrand v. Sava*, 684 F.2d 204 (2nd Cir.1982).

The discretion of the district director is controlled by statute, 8 USC § 1182(d)(5)(A), providing in relevant part:

The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States ...

Pursuant to that general authority, the INS has promulgated a regulation, 8 CFR § 212.5, providing in pertinent parts:

(a) In determining whether or not aliens who have been or are detained ... will be paroled out of detention, the district director should consider the following:

(2) The parole of aliens within the following groups would generally come within the category of aliens for whom the granting of the parole exception would be "strictly in the public interest" [8 USC § 1182(d)(5)(A)], provided that the aliens

---

1. The record does not explain the discrepancy in dates.

present neither a security risk nor a risk of absconding:

(i) Women who have been medically certified as pregnant;

(ii) Aliens who are defined as juveniles . . . ;

(iii) Aliens who have close family relatives in the United States . . . ;

(iv) Aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States;

(v) Aliens whose continued detention is not in the public interest as determined by the district director.

The petitioners applied for parole under § 212.5(a)(2)(v). Accordingly, this court must determine whether the district director legitimately made bona fide decisions that the continued detention of each of the petitioners was in the public interest.

At the hearing on the petitions for Writ of Habeas Corpus respondent's counsel suggested that the denials are essentially "political decisions" which must be given deference in the courts. That view would abrogate the authority and responsibility of this court to consider the lawfulness of holding the petitioners in custody under 28 U.S.C. § 2241.

The public interest standard for parole of aliens is confusing. The statute allows for parole of aliens for "emergent reasons or for reasons deemed strictly in the public interest." This phrasing is in the disjunctive, indicating that "emergent reasons" are different from reasons in the public interest. It also suggests that to grant parole in the public interest, the reason must reflect a positive contribution to the public interest. The regulation, however, suggests that the district director should grant parole unless continued detention serves the public interest. *See* 212.-5(a)(2)(v).

■ The regulation is more specific than the statute. Rephrased, the directive is that aliens whose continued detention is not in the public interest are within a group which would generally come within the category of aliens for whom the granting of parole would be strictly in the public inter-

est. Accordingly, a denial of parole should be based on an affirmative determination that the public interest warrants continued detention. The decision must be made on an individualized basis. *Jean v. Nelson,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

■ The district director denied parole of these aliens in a series of letters. This court reviewed his decisions that parole was not in the public interest based on all of the decision letters. The court's review of the district director's letters under the facially legitimate and bona fide reason standard is a two part review. First, the court must consider whether the district director stated facially legitimate reasons for his conclusion that continued detention would serve the public interest. If reasons are not given, the court is unable to review the decision. The court is not permitted to reweigh the district director's reasons. *Bertrand v. Sava,* 684 F.2d 204, 212 (2nd Cir.1982).

■ Second, the court must consider whether the district director made a bona fide decision that continued detention would serve the public interest. Webster's Third New International Dictionary defines bona fide as "made in good faith," and this is also the common meaning of that phrase in American law. To determine whether the district director acted in good faith in denying the parole requests of the petitioners, the court must know his reasons.

■ The district director did not provide adequate reasons for denying parole to the 91–M–469 aliens in his single letter of March 21, 1991. The letter stated only that: "The aliens had found refuge in a third country prior to their arrival in Anchorage. Their admissability into the United States is clearly in question, as is their asylum application. . . . Rather than being in the public interest to release these aliens, it is my determination that they remain in custody." There is nothing more than a conclusion that release of the aliens is not in the public interest. Accordingly, the court cannot determine whether the district director made a facially legitimate

and bona fide review of the individual circumstances of these petitioners. The petitioners filed lengthy affidavits concerning their backgrounds. The local Chinese–American community demonstrated a desire to offer financial and emotional support upon the release of the petitioners; funds have been collected for the petitioners and petitions have been signed supporting their release. The district director failed to indicate whether he considered these factors. Under these circumstances, the court cannot find that he made a good faith review of the circumstances of each of the petitioners before denying them parole. The likelihood of success of their asylum applications is not a legitimate factor because it is not mentioned in the statute or the regulation.

Similarly, the first two denial letters sent to Mr. Chen did not state reasons for the conclusion that Mr. Chen's continued detention would serve the public interest. The December 20, 1991 letter suggested that the district director could grant parole only in "emergent situations." The January 2, 1991 letter added that Mr. Chen does not fall within the dates of a presidential executive order regarding deferred departure of Chinese nationals. The district director did not address how Mr. Chen's detention serves the public interest. These letters, like the initial decision letter to the 91–M–469 petitioners, contained nothing to show consideration of any circumstances particular to Chen.

The third letter received by Chen, and the second letter received by each of the 91–M–469 petitioners are nearly identical. The district director reaffirmed the denials of parole. The district director reiterated that each came from a third country and stated that none of the petitioners sought political asylum status with the American consulate in that third country prior to making the application for asylum here. He also noted that the petitioners do not have immediate family in the United States. The district director then concluded that parole of these aliens is not in the public interest without ever stating an affirmative reason why continued detention serves the public interest.

The district director had several letters and newspaper articles written by Chinese–Americans indicating financial and emotional support for these aliens. Section 212.-5(a)(2)(ii) provides for release on parole, as "strictly in the public interest", of aliens who have close family relatives in the United States. The respondent has not explained why the support of the Chinese–American community is not the functional equivalent of such family support.

Because the district director failed to provide adequate reasons as to any petitioner to support their continued detention in the public interest, and because the district director's denial letters failed to demonstrate that he gave individual attention to the requests, it is

ORDERED that the district director has 30 days to reconsider the requests for parole of these petitioners according to the interpretation of the law made in this opinion and to issue new decisions on each of them, either denying parole for adequate reasons or granting parole on such terms and conditions as may be appropriate, failing in which this court will grant the Writs of Habeas Corpus and release the petitioners.