**Shirin NOORANI, Petitioner,**

v.

**Richard C. SMITH, District Director,
U.S. Immigration and Naturalization
Service, Respondent.**

**No. C92–1033Z.**

United States District Court,
W.D. Washington, N.D.

Jan. 8, 1993.

☞53.9

Dan P. Danilov, Seattle, WA, for petitioner.

Peter O. Mueller, U.S. Atty.'s Office, Seattle, WA, for respondent.

### ORDER

ZILLY, District Judge.

This matter comes before the Court on petitioner's request for parole pending res-

olution of her challenge to an order of deportation and denial of asylum by the Immigration and Naturalization Service (INS). The Court hereby REMANDS petitioner's parole request to the District Director of the INS to reconsider petitioner's request under the criteria set forth in the INS Parole Policy announced on April 20, 1992, and ORDERS the Director to promulgate a written decision within thirty (30) days of this order.

## BACKGROUND

Shirin Noorani is a native and citizen of Iran. She is currently being held in the custody of the INS at Seattle. Ms. Noorani entered the United States as a visitor in December, 1985. She was granted a change of nonimmigrant status to that of an F-1 student. She graduated from the University of California–Irvine in March, 1989, and began study as a medical student at Hahnemann University in Pennsylvania in 1990. In 1991, Ms. Noorani travelled to Canada twice to apply for renewal of her student visa. Both times, her request was denied. After the second of those trips, in September, 1991, Ms. Noorani attempted to re-enter the United States at Sumas, Washington. Ms. Noorani was detained and placed in exclusion proceedings based upon the allegation that she had attempted to enter the United States without documents and had falsely represented to an immigration inspector that she was a U.S. citizen. She has been held in INS custody continuously since that date.

Ms. Noorani has contested INS allegations of excludability and has now exhausted her administrative remedies. Her original request for parole was filed while her appeal to the Board of Immigration Appeals (BIA) was pending. That appeal has been denied, and Ms. Noorani has renewed her request for parole pending review by this Court of the petitioner's amended petition for a writ of habeas corpus.

Petitioner argues that the District Director's denial of her parole request was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law, and violates applicable INS regulations and the Immigration and Nationality Act of 1952. Petitioner's arguments depend on applicability to her case of a new policy regarding parole of detainees subject to exclusionary proceedings which was announced by the INS on April 20, 1992, *after* an initial denial of parole by the INS, which this Court upheld in 1991. Petitioner arguably meets at least several of the "release criteria" set forth in the new policy. *See* April 20 memo, administrative record of August 3, 1992.

The INS counters that the parole policy instituted in 1992 on which Petitioner relies applies only to those coming into immigration custody after the policy was instituted. The INS also argues that all claims with regard to this policy are moot now that the BIA has denied Ms. Noorani's appeal because the policy does not apply to aliens whose asylum claims have been administratively denied and who are subject to a final order of exclusion.

## STANDARD

INS rejection of a parole request must be upheld by courts "if the agency advanced a facially legitimate and bona fide reason for the denial." *Mason v. Brooks,* 862 F.2d 190 (9th Cir.1988).

## ANALYSIS

*1. Reasons for Denial of Petitioner's Renewed Parole Request*

The District Director denied Petitioner's most recent parole request, made on June 19, 1992, by way of a letter dated June 30, 1992. In the letter, the Director advanced a number of reasons for denying the request.

The District Director first made reference to a previous denial of parole upheld by this Court in *Shirin Noorani v. Richard C. Smith,* Case No. C91–1368Z (W.D. Wash, filed Nov. 26, 1991). The Director stated that "[a]ll facts were carefully considered in that case," that the renewed request "does not raise any new facts in support of paroling [Ms. Noorani]," and that the Director would "continue to ad-

here to [his] earlier decision denying parole."

In addition, the Director stated that the rationale for denying parole had been strengthened by the denial of Ms. Noorani's requests for asylum and withholding of deportation by an Immigration Judge.

Finally, despite emphasizing that petitioner had no right to "automatic re-review" of parole decisions after promulgation of the Parole Project in April, 1992, the Director stated that "the Litigation Section had reviewed Ms. Noorani's confinement and recommended against her release about a month ago." In light of this review, the Director decided to "follow this recommendation and adhere to [his] earlier decision denying Ms. Noorani parole."

### 2. Deficiencies of the Director's Parole Decision

In the decision of this Court referred to by the District Director in his letter, the Court adopted a Report and Recommendation that found that the Director had advanced facially valid and bona fide reasons for denying petitioner's initial parole request in 1991. Contrary to the Director's assertions that no new facts had arisen to change his earlier reasoning, a significant new development has taken place since the Director's initial denial of petitioner's parole request: promulgation by the INS on April 20, 1992 of a new policy regarding release of detainees seeking asylum (the "Parole Project" or "policy").

The Parole Project sets forth "criteria for release" in making parole decisions designed to provide more uniform standards for release of detainees than arbitrary factors such as space availability in detention facilities. The policy provides, *inter alia,* that detainees be interviewed to determine whether they meet the release criteria set forth in the policy, and that if an interviewer finds that a detainee meets the criteria, the interviewer *shall* recommend to the district director that the person be paroled. If a district director believes that there is a significant risk of flight by an alien who meets the listed criteria, or if an alien meets some but not all of the criteria, the policy provides that a director may require an alien to post a bond to ensure compliance with the conditions of release set forth in the policy.

Given the specific criteria and guidance set forth in the new policy, reference by the District Director in this case to a decision made prior to promulgation of more exacting standards for parole decisions cannot, by itself, suffice to meet the standard of supplying "facially valid and bona fide reasons for denying parole."

The Director contests Petitioner's assertion that she is entitled to have her detention reviewed under the new policy. In his letter, he set forth as the reason for inapplicability of the Parole Project criteria the fact that an Immigration Judge had already denied Petitioner's asylum application. Nevertheless, the Director noted that "the Litigation Section" had indeed reviewed Ms. Noorani's detention subsequent to promulgation of the new policy and had again denied the request for parole. The Director did not set forth the reasons given by "the Litigation Section" for denial of parole under the policy. He defended the absence of stated reasons for the denial by arguing that such review "is a purely internal process and there is no right to appeal or review of this recommendation."

Regardless of whether such review is an "internal process", if the District Director relies on the decision of "the Litigation Section" to explain his denial of a parole request, reference to the lack of right to review of such a decision is not enough to shield that review from scrutiny by this Court. The Director is obligated to advance "facially legitimate and bona fide reasons" for denial of a parole request. Reference to a secret internal review process cannot satisfy that standard, or review by this Court would be meaningless. *See Li v. Greene,* 767 F.Supp. 1087, 1090 (D.Colo.1991). If the Petitioner is entitled to review of her parole request under the new policy, the Director is obligated to state the reasons for denial in terms of the criteria enunciated in the policy. He may rely on the "Litigation Section" to complete the internal review process, but ultimately

he is obligated to advance a reasoned decision that takes into account the factors involved in making that decision that have been enunciated by his own agency.

The INS argues in its briefs that the intervening decision of the Immigration Judge denying petitioner's asylum and withholding of deportation requests provided further reason to deny parole because it increased the risk of flight. Even if the Director had stated explicitly in his decision that denial of parole was due to an increased risk of flight, the Parole Project provides a method for handling a release request where the Director believes there is a high risk of flight: the Director may require a detainee to post a bond to ensure her departure rather than further detaining her. While the policy does not *require* that the Director release a detainee on bond, the specificity of the guidelines suggest that a decision regarding a parole request must at a minimum indicate that the Director has considered and weighed the risk that a detainee will flee and whether a bond in a particular amount is an appropriate alternative to continued detention.

### 3. Applicability of INS Parole Policy to Aliens who have Exhausted Administrative Remedies

■ Petitioner seeks to have this Court order the INS to parole her under 8 U.S.C. § 1182(d)(5)(A), which authorizes the Attorney General to parole aliens seeking entry into the United States for emergent reasons or for reasons in the public interest. Under this statute, the INS announced a policy beginning April 20, 1992, the "Parole Project", under which applicants who met certain criteria and were not a threat to abscond or to the public safety would be released on parole. The INS argues that the policy on its face does not apply to aliens subject to a "final order" of deportation. But the policy does not state that it applies only to aliens who have not yet had an administrative review of their asylum application. In the memorandum of April 20, 1992 announcing the Parole Project, the INS Commissioner set forth "the criteria under which a person who appears to be excludable from the United States, but who

has made a claim for asylum, may be paroled *pending adjudication of his or her claim.*" April 20 memorandum at 1 (emphasis added). The question on which this issue turns is whether "adjudication of a claim" includes the entire process of adjudication, including judicial review of a final administrative decision, or just the initial decision by an Immigration Judge, or even the final administrative decision of the Board of Immigration Appeals (BIA).

Nothing in the April 20 memorandum or the three clarifying memoranda submitted by the INS suggests that "adjudication of a claim" as set forth in the policy applies only to some subsection of the full review process provided to aliens by statute, and would exclude judicial review of final decisions of the BIA. In addition, in order to qualify for release under the Parole Project, an alien must "agree ... to appear for deportation, if the person is *ultimately* ordered excluded." April 20 memo (emphasis added). The ultimate order of exclusion in a case such as this, in which an alien appeals a denial of asylum and withholding of deportation, comes only when the petitioner has exhausted all administrative, as well as judicial, remedies.

The policy also contemplates inclusion in parole decisions of factors suggesting increased risk of flight by providing that an alien may be ordered to post a bond "[i]n cases where the person meets some but not all of the ... tests, or where other factors suggests a strong risk that the person will not appear as required...." April 20 memo at 2. This provision suggests that the increased risk of flight attributed by the District Director to aliens such as Ms. Noorani who have had adverse administrative decisions rendered against them may be factored into the parole decision itself under the policy, rather than precluding the use of the policy at all in making such decisions. This reading of the policy is also supported by the case cited by the Director in support of his determination that the initial adverse decision by an Immigration Judge justified denial of parole. The Director cited *Matter of Sugay*, 17 I & N Dec. 637 (BIA 1981), as a case in which the

"fact that [an Immigration Judge] had ordered alien deported and [denied relief] combined with new evidence to justify *raising the amount of bond.*" June 30 letter at 1 (emphasis added). *Sugay* may have justified raising the bond required of petitioner on parole, precisely the procedure approved by the new policy, but does not support the proposition that continued detention is justified solely by an adverse decision by an Immigration Judge.

The Court holds that the Parole Project policy is applicable to parole decisions regarding aliens throughout the entire adjudication of their claim, including judicial review of INS administrative decisions. This decision does not require the District Director to release Ms. Noorani. But it does require the Director to review requests for parole in light of the policy even if a petitioner has advanced through some degree of administrative process, and to state reasons for the denial of a request that are legitimate and bona fide given the recent promulgation of a new national policy on parole by the INS.

### 4. Applicability of INS Parole Policy to Aliens in Custody Prior to Promulgation of the Policy

█ The INS argues as a further reason for denial of Petitioner's parole request that the District Director "took the position that the [new] policy applied only to those coming into immigration custody and seeking asylum *after* the date the policy was instituted." INS Response to Amended Petition at 3.

The Parole Project on its face does not limit the class of detainees that are to be subject to the new policy to those who are taken into custody on or after promulgation of the policy. The policy memorandum was followed by three clarifying memoranda in May, 1992. In a memorandum of May 4, the INS General Counsel sought to clarify the "persons eligible for pre-screening interviews." He stated:

All asylum applicants detained on or after April 20, 1992, who are in exclusion proceedings should be interviewed. Requests for interviews from persons in deportation proceedings, or from persons detained prior to April 20, should be handled on a case-by-case basis.

May 4 memo. On May 20, a trial attorney for the local INS general counsel sent a memorandum to the District Director and local officers asking for identification of "all detained aliens held in exclusion who have applied for asylum" so that he could conduct interviews under the new policy. The memorandum further asserts that, "Generally, this program does not apply to aliens in deportation proceedings, or to those aliens detained prior to April 20, 1992." May 20 memo.

Taken as a whole, the memoranda do not provide any standards or guidance for handling requests for interviews under the policy by persons detained prior to April 20, 1992. However, the interpretation of the national office of general counsel clearly requires the District Director to "handle" such requests on a "case by case basis." An interpretation by the local District Director that rules out in advance, as a blanket policy, requests for screening interviews by such detainees violates the clear language of INS national policy as interpreted by national general counsel. The INS argument in its briefs that the Director, as a matter of local policy, does not apply the Parole Project criteria to any aliens detained prior to April 20, 1992, is not a facially legitimate reason for refusing to consider Petitioner's parole request under the new policy criteria. In addition, the Director's letter makes clear that the INS did in fact review Ms. Noorani's request under the new policy. Having decided to undertake such review of the request in this case, the Director is obligated to supply reasons for denying the request that are "facially valid" in light of the new policy.

In addition, fundamental fairness in application of the new policy requires that it be applied to *all* detainees in INS custody, including those taken into custody prior to April 20, 1992. There is simply no justification for applying the policy to persons newly detained while refusing to allow consideration under the new release criteria of

detainees such as those in Petitioner's position. In this case, Ms. Noorani has already been in custody for one and one-half years and may be required to remain in custody through final appeal of her case, which could extend well into 1994.

## CONCLUSION

For the foregoing reasons, none of the justifications provided by the District Director to support his denial of Ms. Noorani's parole request can support a denial of parole in light of the new policy. The Court therefore:

1) REMANDS Petitioner's parole request to the District Director for reconsideration in light of the parole policy announced April 20, 1992 and consistent with this Order;

2) ORDERS the Director to promulgate a written decision within thirty (30) days of this order that takes into account the new policy. If, as the Director stated in his letter denying the parole request, the Litigation Section has already considered Ms. Noorani's request in light of the new policy, the Director has only to state the reasons for that recommendation of denial so that this Court may review those reasons. *Mason v. Brooks*, 862 F.2d 190 (9th Cir. 1988); *Li v. Greene*, 767 F.Supp. 1087, 1090 (D.Colo.1991); and

3) DIRECTS that the Petitioner shall remain in the custody of the Director pending a final resolution of the parole request.

IT IS SO ORDERED.