Mario PASQUINI, Petitioner-Appellant,

v.

Raymond MORRIS, as District Director, Immigration and Naturalization Service, Miami, Florida, Respondent-Appellee.

Peter N. ZACHARAKIS, Petitioner-Appellant,

v.

Joseph HOWERTON, as District Director, Immigration and Naturalization Service, Miami, Florida, Respondent-Appellee.

Nos. 81–5123, 81–5799.

United States Court of Appeals, Eleventh Circuit.

March 17, 1983.

James G. Roth, Walters, Costanzo, Miller & Russell, Miami, Fla., for petitioners-appellants.

Patricia D. Kenny, Asst. U.S. Atty., Miami, Fla., for respondents-appellees.

Before TJOFLAT, KRAVITCH and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

Peter N. Zacharakis appeals a judgment by the district court denying his petition for a review of a denial of a deferred action by the Immigration and Naturalization Service (INS) on the ground that internal operating instruction (O.I.) 103.1(a)(1)(ii) conferred no substantive rights on aliens. This case has been consolidated with that of Mario Pasquini, who appeals the order of the district court denying his petition for a writ of habeas corpus seeking review of the INS's decision to deny Pasquini's application for a deferred action status pursuant to O.I. 103.-1(a)(1)(ii).

Both Pasquini and Zacharakis concede that they are aliens subject to deportation under the Immigration and Naturalization Act. They, however, contend that the INS's O.I. 103.1(a)(1)(ii) confers substantive rights on aliens who seek inclusion within the non-priority, deferred action status so that failure of an INS district director to comply with the instruction is a denial of the aliens' substantive rights. We hold that O.I. 103.1(a)(1)(ii), is for the convenience of the INS and does not have the force and effect of law. Therefore, the instruction cannot confer substantive rights upon aliens. We affirm the decision of the district court, 517 F.Supp. 1026 in denying Pasquini's writ of habeas corpus and Zacharakis's review of his denial of deferred action status.

## FACTS

Zacharakis left his native Greece as a child and lived in the United States until January, 1962, when he returned to Greece. He reentered the United States without inspection in December of that same year. The INS ordered Zacharakis deported in October, 1963. He failed to surrender for deportation; instead, he married a United States citizen in February of 1964. He reopened the deportation proceedings, claiming that as a result of his marriage he was eligible for adjustment of status under 8 U.S.C.A. § 1255 on the basis of a visa petition filed by his wife. A hearing was scheduled, but Zacharakis failed to appear. In September, 1964, his first wife withdrew her visa petition, and Zacharakis was deported to Greece in January, 1965.

While being detained for interrogation at the Canadian border, Zacharakis leaped from a window and reentered the United States without inspection in March of 1965. He was thereafter charged with a violation of 8 U.S.C.A. § 1326, which makes it a felony for any alien who has been deported to thereafter enter or attempt to enter the United States without making application for admission. Upon capture, Zacharakis pleaded guilty, and the court sentenced him to a term of three months.

After a hearing, Zacharakis was again deported to Greece in September, 1965. By deserting from his position as a ship's crew member, he again reentered the United States without inspection in April, 1967. Upon being apprehended in November of 1968, Zacharakis was convicted of evading or attempting to evade the immigration laws by appearing under an assumed or fictitious name in violation of 18 U.S.C.A. § 1546. The court sentenced him to two years imprisonment.

Upon his release on bond in June, 1970, he filed an application seeking political asylum in the United States. The application for asylum was denied. His marriage to his first wife terminated. In 1972, while the application for asylum was pending, Zacharakis married a second wife. His second wife filed a visa petition in his behalf.

A deportation hearing arising from the 1967 entry was held. The INS again determined that Zacharakis was deportable. In lieu of the order of deportation, however, Zacharakis requested and received the option of voluntary departure without expense to the government on or before July, 1975. He obtained extensions of time delaying his departure from the United States, the last of these extensions expiring in April, 1977. His application for waiver on grounds of excludability was denied in October of that year. Zacharakis was then advised by letter that arrangements had been made for his departure to Greece on August 11, 1978. He was requested to reappear on that date, ready for the scheduled departure. Zacharakis did not appear. He was apprehended in October, 1980.

Zacharakis applied to the district director for a stay of deportation and requested deferred action status. Discretionary "deferred action," pursuant to the INS's unpublished O.I. 103.1(a)(1)(ii), advises district directors that deferred action status be granted in cases where "adverse action would be unconscionable because of the existence of appealing humanitarian factors." The district director denied the application and request. Zacharakis sought habeas corpus relief in the district court seeking release from confinement, stay of deportation, and review of his denial of deferred action. The district court denied his petition for review of his denial of deferred action status. It is from the district court decision that Zacharakis appeals.

Mario Pasquini was born in Italy. He left that country in 1956, eventually settling in Freeport, Grand Bahamas, in 1963. He later married a United States citizen. In 1971, he was arrested in the Bahamas for possession of marijuana, and fined $600. Pasquini, his wife, and his children relocated in the United States, opening an antique shop in Miami, Florida. Pasquini came to this country under a B–2 visa. He left the country on a buying trip, returning in July, 1974. In order to reenter the United States, Pasquini used the documents and identification of another person.

A hearing was held in January, 1976, and Pasquini was found deportable under 8 U.S. C.A. §§ 1251(a)(2) and 1251(a)(11), by reason of his marijuana conviction and his entry into the country without inspection. Pasquini's application for adjustment of his status to permanent residency, based upon his marriage to a United States citizen, was denied. Additionally, this decision was appealed to the Board of Immigration Appeals, where the Board held that Pasquini was deportable under section 1251(a)(11) and statutorially ineligible for adjustment of status under section 245 of the Immigration and Nationality Act.

Pasquini sought review in the Fifth Circuit. The Fifth Circuit affirmed the order of the Board, finding Pasquini excludable. He was ordered to appear on September 27, 1977, for deportation to Italy. Instead of reporting, he filed a request for deferred action status and stay of deportation. The district director of the INS denied this request. Pasquini then filed a complaint and request for a temporary restraining order suspending his deportation. The district court denied his requests for the temporary restraining order and preliminary injunction. In December, 1977, Pasquini filed a second application for stay of deportation and request for non-priority status. These requests were also denied. The district court dismissed the complaints for injunctive relief, finding that Pasquini was entitled to no relief. Pasquini requested permission to reapply for admission to the United States; the district director also denied this request in July, 1978.

In April, 1978, after his marriage had terminated, Pasquini was arrested on an outstanding deportation order and deported to Italy. He again reentered the United States without inspection in June, 1979. Following a hearing, Pasquini was found deportable and ordered to appear for deportation on July 7, 1980. He filed a second request for deferred action status and an application for stay of deportation. As a basis for his petition for deferred action, Pasquini asserted that he was the sole emotional and financial support for his ex-wife

and small child, both American citizens. Since his presence in the United States provided financial and emotional security to his daughter in her formative years, Pasquini contends that there existed in his case certain "appealing humanitarian factors," such as would trigger the granting of deferred action status under O.I. 103.1(a)(1)(ii).

The district director denied the request for deferred action and the application for stay of deportation on June 24, 1980. On June 26, 1980, Pasquini petitioned the United States District Court for the Southern District of Florida for a writ of habeas corpus. In January, 1981, the court denied the petition. This appeal followed.

The issue we are called upon to decide is whether O.I. 103.1(a)(1)(ii), indicates that INS district directors "shall" grant deferred action status where certain "appealing humanitarian factors" exist, confers upon aliens a substantive right to receive deferred action status when such factors are present.

## DISCUSSION

Internal operating instruction 103.-1(a)(1)(ii) involves the action that a district director of the INS may make when confronted with a petition for deferred action in a deportation case. Internal operating instruction 103.1(a)(1)(ii) states in part:

> (ii) Deferred action. In every case where the district director determines that adverse action would be unconscionable because of the existence of appealing humanitarian factors, he *shall* recommend consideration for deferred action category. His recommendation shall be made to the regional commissioner concerned on Form G–312, which shall be signed personally by the district director. Interim or biennial reviews should be conducted to determine whether approved cases should be continued or removed from deferred action category. When determining whether a case should be recommended for deferred action category, consideration should include the following: (1) advanced or tender age; (2) many years presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—affect of explusion; (5) criminal, immoral or subversive activities or affiliations—recent conduct. If the district director's recommendation is approved by the regional commissioner, the alien shall be notified that no action will be taken by the Service to disturb his immigration status, or that his departure from the United States has been deferred indefinitely, whichever is appropriate. [Emphasis added.]

Deferred action status, also known as "nonpriority status," *Nicholas v. INS,* 590 F.2d 802, 805 n. 8 (9th Cir.1979), amounts to, in practical application, a reprieve for deportable aliens. No action (i.e., no deportation) will be taken by the INS against an alien having deferred action status.

Zacharakis and Pasquini assert that the above internal operating instruction has the force and effect of law, thereby requiring the district director to grant deferred action status to any alien requesting it when the alien satisfies any of the above five subsections of the operating instruction. Failure of the district director to grant deferred status amounts to a denial of the alien's substantive right.

In determining on appeal whether O.I. 103.1(a)(1)(ii) confers a substantive right on aliens who seek inclusion within the deferred action category, we note that this circuit has not directly addressed this issue. The Fifth Circuit, however, has held that operating instructions of the INS do not have the force and effect of substantive law. *Dong Sik Kwon v. INS,* 646 F.2d 909 (5th Cir.1981) (en banc). In *Dong Sik Kwon,* a Korean national in the United States under a visitor's visa submitted an application to the INS for an adjustment to permanent resident status. Kwon contended that an internal operating instruction of the INS required the INS to send him a notice of rejection of his application, and that the INS's failure to do so formed the basis upon which he could be granted affirmative relief. The Fifth Circuit refused

to grant such relief, stating that "[u]nlike regulations, Operations Instructions, generally, do not have the force of law. They furnish only general guidance for service employees . . . . The Operations Instructions . . . confer no substantive rights on applicants." 646 F.2d at 918–19.

Pasquini and Zacharakis rely upon the Ninth Circuit case, *Nicholas v. INS,* as authority for their contentions. The Ninth Circuit, the only circuit to do so, scrutinized O.I. 103.1(a)(1)(ii) and concluded, conversely, that "[i]t is obvious that this procedure [internal operating instructions] exists out of consideration for the convenience of the petitioner, and not that of the INS. In this aspect, it far more closely resembles a substantive provision for relief than an internal procedural guideline." 590 F.2d at 807. Further, the court in *Nicholas* notes that "[t]he Instruction provides that, '[i]n every case' where relief is appropriate, the District Director 'shall recommend' deferred action category." 590 F.2d at 807. The court interprets this to mean that the granting of deferred action status was an affirmative duty on the part of the district director where the district director felt such relief to be appropriate. We note, however that the Ninth Circuit did acknowledge that the district director had the discretion to determine the granting of such status. The *Nicholas* court concluded by holding that the district director's discretionary decision of whether to grant such status should stand unless it so departs from the established patterns of treatment as to be arbitrary, capricious, and an abuse of discretion. 590 F.2d at 808.

We will not follow the Ninth Circuit. Although the Ninth Circuit has determined that the internal operating instructions of the INS may have an effect upon the substantive rights of the aliens requesting deferred action status, it is the only circuit to so hold. It bases that holding upon the fact that it perceives the subject matter of these internal operating instructions to concern what would be, in the case of United States citizens, substantive rights. The decision is not made with an acknowledgement of the traditional status given to internal instructions, distinct from regulations.

The Administrative Procedure Act provides for the publication in the Federal Register of all proposed rulemaking by administrative agencies. 5 U.S.C.A. § 553(b) (1970). An exception, however, is made in the case of proposed rulemaking involving "interpretative rules, general statements of policy, or rules of agency organizations, procedure, or practice . . . ." 5 U.S.C.A. § 553(b). *Yan Wo Cheng v. Rinaldi,* 389 F.Supp. 583, 588 (D.N.J.1975). Proposed rulemaking not falling within the latter category require publication because they normally involve substantive rights and have the force of law. Internal operating instructions, on the other hand, have fallen within the latter category since the INS considers such instructions to be "internal directives," not having the force and effect of law as do regulations. *Dong Sik Kwon,* 646 F.2d at 918. *See Lennon v. I. & N.S.,* 527 F.2d 187, 191 n. 7 (2d Cir.1975).

The non-priority status which Pasquini and Zacharakis contend as their substantive right is only an "informal and ministrative stay of deportation . . . issued in large part for the convenience of the INS." *Soon Bok Yoon v. INS,* 538 F.2d 1211, 1213 (5th Cir. 1976). The Fifth Circuit has held that the decision to grant or withhold non-priority status is firmly within the discretion of the INS and subject to review only when there is a clear abuse of discretion. 538 F.2d at 1213. Accordingly, the district director of the INS may grant or withhold non-priority status to Pasquini and Zacharakis as he or she sees fit, in accord with the abuse of discretion rule when any of the five determining conditions is present. We reaffirm the position of the Fifth Circuit. The internal operating procedures of the INS are for the administrative convenience of the INS only.

The Ninth Circuit in *Nicholas,* in attempting to provide support for its position, emphasizes the fact that the Eighth Circuit, in two cases, upheld deportation orders for aliens, but stayed their mandate ninety days in order that the aliens might apply to

their district directors for deferred action status. *Vergel v. INS,* 536 F.2d 755, 757–58 (8th Cir.1976); *David v. INS,* 548 F.2d 219, 223 (8th Cir.1977).

We find nothing in these opinions to sway us from our long held position. The fact that the Eighth Circuit allowed aliens ninety days to apply to their district directors for deferred action status does not mean that the Eighth Circuit is holding that district directors must grant such status. In each instance, the Eighth Circuit merely allowed the aliens the opportunity to make application to the district directors of the INS for deferred action, or non-priority status, concurrent with O.I. 103.1(a)(1)(ii), at the same time recognizing that the granting of such status was within the discretionary authority of the INS district director. The Eighth Circuit has not held that the internal operating instruction confers a substantive right upon an alien to receive such status. Rather, the Eighth Circuit recognizes, as does the Fifth Circuit, and as the Eleventh Circuit does now, that it is solely within the discretion of the district director of the INS to determine whether an alien may be granted inclusion into such category. The alien has no right to demand such status.*

## CONCLUSION

Accordingly, we find no basis upon which to award Pasquini and Zacharakis the relief sought. The decision of the district court, denying the petition of Zacharakis for petition of review of a denial of a deferred action status by the INS, and the decision of the district court denying Pasquini's petition for a writ of habeas corpus seeking review of the INS decision are affirmed.

AFFIRMED.

---

* Although the internal operating instruction confers no substantive rights on the alien-applicant, it does confer the procedural right to be considered for such status upon application. Zacharakis's application was considered and denied on October 10, 1980. Pasquini's application for deferred action status was considered and denied on June 24, 1980. Thus, both aliens' procedural rights were met by the INS.