Xin–Chang ZHANG, A72–
762–145, Petitioner,

v.

William SLATTERY, INS District Director for Detention and Deportation, Roseanne Sonchik, INS Acting Assistant District Director for Deportation, and Charlene Monroe, INS Immigration Officer, Respondents.

No. 93 Civ. 7960 (RPP).

United States District Court,
S.D. New York.

Jan. 6, 1994.

Davis Polk & Wardwell, by Sung–Hee Suh, Michael Osborne, New York City, for petitioner Xin–Chang Zhang.

Mary Jo White, U.S. Atty., S.D.N.Y. by F. James Loprest, New York City, for respondents William Slattery, Roseanne Sonchik, and Charlene Monroe.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Xin–Chang Zhang petitions for a writ of habeas corpus on the grounds that he is being unlawfully detained as a result of his not being granted parole by the Immigration and Naturalization Service ("INS") pending the outcome of his application for asylum. For the reasons stated below, Mr. Zhang's petition is denied and his application for parole is remanded to the District Director of the INS.

## BACKGROUND

This case arises from the running aground of the ship Golden Venture off the beaches of Rockaway, Queens, on June 6, 1993, and the swimming ashore of Petitioner Xin–Chang Zhang, a national of the People's Republic of China. By arrangement with smugglers, Mr. Zhang had made a $5,000 down payment on a $25,000 fee for passage to the United States. After fleeing the city of Fu Zhou and travelling with twenty or thirty other refugees by motor boat, Mr. Zhang boarded the Golden Venture in February 1993.

When the Golden Venture ran aground, Mr. Zhang had been living aboard with approximately 300 other Chinese refugee-passengers for several months. Along with many other passengers, Mr. Zhang jumped into the water and swam about one-hundred meters to the shore, arriving without any documentation. Upon reaching the beach, Mr. Zhang was assisted by rescue teams and later taken into custody and placed in detention at the Immigration and Naturalization Service processing facility at 201 Varrick Street, New York, New York, where he has been held continuously to the present.

Shortly after he was taken into custody, the INS commenced exclusion proceedings against Mr. Zhang. On July 16, 1993, Mr. Zhang's motion to terminate exclusion proceedings was denied by Immigration Judge Alan Page, and Zhang applied for asylum in the United States. His asylum application asserts that he was driven into hiding by the Chinese government's attempts to force him to undergo a sterilization procedure and that, if he were returned to China, he would face persecution for his political opinion against China's policy limiting families to one child and for his illegal flight from China.

On August 13, 1993, Mr. Zhang applied to Respondent William Slattery for parole from detention pending the adjudication of his asylum claim. He filed the application pursuant to the "Parole Project for Asylum Seekers," a program established by INS Commissioner Gene McNary by Memorandum to INS District Directors and other personnel, dated April 20, 1992 (the "Parole Project Memorandum" or "Memorandum"). *See* Suh Aff., Exh. 10. Although the memorandum was not promulgated as a formal regulation and published in the Code of Federal Regulations, it appeared in Interpreter Releases, a newsletter. *See* 69 Interpreter Releases 526 (April 27, 1992).

The Parole Project Memorandum lists five criteria for INS district directors to apply to parole applications by detainees and establishes a process for evaluating detainees' claims.[1] It provides that "[p]re-screening interviews will be conducted" for the interviewer to determine whether to recommend parole for each asylum applicant. In determining whether to recommend parole, "the interviewer will determine if the [enumerated] criteria have been met." The Memorandum further provides:

> If the interviewer has found that the person has met the ... criteria, and in the absence of other factors suggesting an un-

---

1. The five criteria are whether the applicant: (1) can establish his true identity to a reasonable degree of certainty; (2) has a credible claim for asylum; (3) is not barred from parole under any of the listed statutory and regulatory prohibitions; (4) has legal representation and/or other means of support; and (5) agrees to certain conditions. Suh Aff., Exh. 10 at 527–28.

usually strong risk that the person will not appear for further proceedings, the interviewer shall recommend to the district director that the person be paroled. In cases where the person meets some but not all of the above tests, or where other factors suggest a strong risk that the person will not appear as required, the district director may require the person to post a bond.

Suh Aff., Exh. 10 at 528. In support of his application for parole, Zhang submitted two letters and supporting documents arguing that he satisfied the Parole Project criteria.[2]

By letter dated August 20, 1993, Respondent Roseanne Sonchik, INS Acting Assistant District Director for Deportation, denied Zhang's application for parole. The letter denial stated that Zhang's application was considered under the criteria set forth in 8 C.F.R. § 212.5. It did not mention the Parole Project or independently address the criteria listed in the April 20, 1992, Memorandum.

## DISCUSSION

Petitioner claims that he is being detained unlawfully because Respondents abused their discretion in denying Petitioner's application for parole. Specifically, Petitioner claims that Respondents abused their discretion by (1) failing to comply with the requirements of the Parole Project; (2) failing to make an individualized determination of Mr. Zhang's parole application; and (3) discriminating against Mr. Zhang on the basis of national origin.

■■■ District Courts may review, on petition for habeas corpus, the discretionary decisions of INS officials to deny parole to persons detained by the INS pending the determination of their applications for asylum. *Bertrand v. Sava*, 684 F.2d 204, 210–11 (2d Cir.1982). The abuse of discretion standard under which parole decisions are to be reviewed, however, is "necessarily narrow." *Id.* at 211. The District Director's

exercise of his broad discretionary power must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole.

*Id.* at 212–13 (citation omitted). A parole determination will not be disturbed where it is based on a "facially legitimate and bona fide reason." *Id.* at 212 (citation omitted).

Petitioner's primary contention is that Respondent Sonchik abused her discretion by failing to consider the criteria for parole set forth in the Parole Project Memorandum. Respondents maintain that the Parole Project Memorandum confers no substantive rights on detainees and does not have the force of law.

■■■ It is well settled that an agency must follow its own internal procedures "[w]here the rights of individuals are affected", whether or not such procedures are formally promulgated and "even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). The Second Circuit interprets *Morton* to require the INS to follow its own regulations when the "subject regulations were for the alien's benefit." *Montilla v. INS*, 926 F.2d 162, 169 (2d Cir.1991) (holding that the INS must adhere to the requirements of 8 C.F.R. § 242.10, which governs the manner in which an alien must be informed of right to counsel at a deportation hearing). It distinguishes cases where "the agency regulation that was departed from governed internal agency procedures rather than . . . the rights or interests of the objecting party." *Id.* at 167 (citing, e.g., *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970)).

Although the Second Circuit has not addressed the issue of whether an agency must adhere to internal directives which are not

2. On June 23, 1993, INS trial attorney Mary Elizabeth Tibbetts had conducted an asylum pre-

screening interview with Zhang.

promulgated as Federal Regulations, other courts have held that the INS must adhere to its internal directives such as Operations Instructions.[3] In *Pasquini v. Morris*, 700 F.2d 658, 662 (11th Cir.1983), it was held that, although Operations Instruction 103.-1(a)(1)(ii)[4] did not have the force and effect of substantive law and confer substantive rights on aliens, *see also Dong Sik Kwon v. INS*, 646 F.2d 909 (5th Cir.1981), it did confer "the *procedural right* to be considered for such [deferred action] status upon application," 700 F.2d at 663 n.* (emphasis added).

■ Like Operations Instruction 103.-3(a)(1)(ii), the Parole Project Memorandum affects detainees' rights within the meaning of *Morton v. Ruiz* and establishes a procedure which must be complied with by the INS. The title of the Memorandum—"Parole Project for Asylum Seekers"—demonstrates that the program is intended to benefit those detainees who are seeking asylum, not other detainees awaiting deportation or exclusion proceedings. Although the Memorandum adverts to alleviating the problem of "limited detention space" at INS facilities, Suh Aff., Exh. 10 at 526, it also aims to establish uniform criteria under which certain detainees may be paroled so that parole decisions are not based "solely or primarily on the availability of detention space." *Id.; Noorani v. Smith*, 810 F.Supp. 280, 282 (W.D.Wash.1993). Allowing district directors more flexibility in making parole decisions benefits those detainees as well as the INS.

■ In *Noorani*, 810 F.Supp. at 283, Judge Zilly required an INS district director to apply the Parole Project criteria to the parole application of a detainee who was initially detained and whose prior parole application had been denied before the Parole Project Memorandum was issued. In denying the petitioner's second request for parole, made after the issuance of the Memorandum, the district director "stated that 'the Litigation Section had reviewed Ms. Noorani's confinement and recommended against her release'" and that the district director had decided to follow the recommendation. *Id.* at 282. Judge Zilly held that the district director had not stated a "facially legitimate, bona fide" reason for denying parole and that, in order to ensure meaningful court review, "the Director is obligated to state the reasons for denial in terms of the criteria enunciated in the [Parole Project] policy." *Id.* Thus as in *Pasquini* the detainee was held to have the procedural right in an INS proceeding to be considered pursuant to an INS internal directive.[5]

Respondent Sonchik's letter determination denying Mr. Zhang's parole request does not reflect that the criteria described in the Parole Project Memorandum were considered. The INS conducted an asylum pre-screening interview. However, there is no indication in Sonchik's letter that the Parole Project procedures were followed during or after the interview. There is no record before the Court indicating that the interviewer made any determination as to the five factors set forth in the Parole Project Memorandum or any recommendation to the District Director about Mr. Zhang's suitability for parole under the Parole Project. Nor is there any indication that the Acting Assistant District Director has exercised her discretion, as pro-

---

**3.** Like the Parole Project Memorandum, INS Operations Instructions are not promulgated as Federal Regulations.

**4.** Operations Instruction 103.1(a)(1)(ii) describes the action an INS district director may take when an alien facing deportation petitions for "deferred action" status. It provides that, "where the district director determines that adverse action would be unconscionable because of the existence of appealing humanitarian factors, he shall recommend" that the regional commissioner consider granting "deferred action" status. It lists several criteria which the district director "should" consider. An alien having "deferred action" status will not be deported.

*Pasquini*, 700 F.2d at 661 (quoting and discussing Operations Instruction 103.1(a)(1)(ii)).

**5.** The Parole Project Memorandum does not, however, confer any substantive right to parole if a detainee meets its enumerated criteria. By its terms, the policy leaves the ultimate determination of a detainee's parole to the discretion of the district director. The district director's exercise of that discretion is reviewable only for an abuse of discretion. *Cf. Pasquini*, 700 F.2d at 661 (rejecting petitioner's substantive claim to "deferred action" status under Operations Instruction 103.1(a)(1)(ii)). *See also Nicholas v. INS*, 590 F.2d 802, 807–08 (9th Cir.1979).

**296**

vided in the Parole Project Memorandum, to deny parole or to consider the possibility of Mr. Zhang posting a bond.

■ In light of its failure to acknowledge Mr. Zhang's application pursuant to the Parole Project for Asylum Seekers and to reflect that the INS adhered to the directives in the Parole Project Memorandum, Respondent Sonchik's letter did not set forth a facially legitimate, bona fide reason for denying parole pursuant to that Memorandum.

■ Petitioner also contends that Respondents abused their discretion by discriminating against Mr. Zhang on the basis of his national origin. Petitioner bases his claim on several public comments made by Respondent William Slattery and other INS employees that the INS would "detain all the Chinese aliens who are coming by ship"; that "We [the INS] plan to make an example of this group . . . [and] to shut down this traffic"; and that parole would be denied to all asylum seekers from the Golden Venture. Absent any evidence that because of their Chinese origin Mr. Zhang or any other Golden Venture passengers have been treated differently than similarly-situated asylum seekers—evidence which Petitioner has not provided—these statements amount to no more than a warning that the INS would, as a matter of policy, take a tough stance against efforts to smuggle ship loads of aliens into the United States under such conditions. Petitioner has neither stated a claim for relief nor presented reason for further discovery on the issue of discrimination.

## CONCLUSION

For the reasons stated above, petitioner's parole application pursuant to the Parole Project for Asylum Seekers is remanded to the INS District Director. The petition for a writ of habeas corpus is denied subject to its renewal on February 6, 1994, if the District Director has not issued a decision on Mr. Zhang's application pursuant to the Parole Project for Asylum Seekers by that date.

IT IS SO ORDERED.