Cesar MALDONADO–CORONEL and
Juan Carlos Maldonado–Santos,
Plaintiffs,

v.

Edward McELROY, District Director, Immigration and Naturalization Service, New York District Office, Defendant.

No. 96 Civ. 7848 (AGS).

United States District Court,
S.D. New York.

Nov. 1, 1996.

Robert F. Belluscio, New York City, for plaintiffs.

Mary Jo White, United States Attorney, Southern District of New York, New York City (F. James Loprest, Jr., Special Assistant United States Attorney, of counsel), for defendant.

## OPINION & ORDER

EDELSTEIN, District Judge:

This matter came before this Court pursuant to an Order to Show Cause signed by this Court, sitting in Part One, on October 17, 1996. This case originally was assigned to the Honorable Allen G. Schwartz, United States District Judge for the Southern District of New York. For reasons beyond his control, Judge Schwartz was unable to consider this action as quickly as the circumstances demanded, and this Court, sitting in Part One, "pinch hit" for Judge Schwartz.

Edward McElroy ("McElroy"), District Director of the Immigration and Naturalization Service for the New York District Office ("INS") ("defendant") was ordered to show cause why the applications for the adjustment of immigration status of Cesar Maldonado–Coronel ("Maldonado–Coronel") and Juan Carlos Maldonado–Santos ("Maldonado–Santos") ("plaintiffs") should not be "expeditiously adjudicated on or before November 3, 1996." (Order to Show Cause *Maldonado–Coronel v. McElroy* 96 Civ. 7848 at 1 (Oct. 17, 1996).) This Court ruled on the issues raised in the Order to Show Cause at a hearing held on October 25, 1996, ("the hearing") and this opinion memorializes its ruling.

## BACKGROUND

Maldonado–Coronel and his son, Maldonado–Santos, are Ecuadorian nationals residing in New York City. (Complaint, *Maldonado–Coronel and Maldonado–Santos v. McElroy,* 96 Civ. 7848 ("Complaint") ¶¶ 1, 7 (Oct. 11, 1996).) Plaintiffs sued McElroy as an individual and in his capacity as District Director of the New York District Office of the INS. *Id.* ¶ 2. Plaintiffs alleged that, pursuant to Section 203(b)(3)(A) of the Immigration and Nationality Act ("the Act"), "an I–140 Immigrant Visa Petition" was filed by plaintiffs and approved by the INS on September 5, 1996. *Id.* ¶ 6. Upon the approval of this petition, plaintiffs claim that Maldonado–Coronel became entitled to file an application for adjustment of status to that of "lawful permanent resident," and that his spouse and children under the age of twenty-one also became entitled to file applications for adjustments of their status to lawful permanent resident. *Id.* ¶ 7; *see* 8 U.S.C. §§ 1101, 1153, 1255. Maldonado–Coronel, his spouse and children under the age of twenty-one, including Maldonado–Santos, all filed these applications on September 25, 1996. (Complaint ¶ 7.) All of their applications were still pending as of the date of the hearing. *Id.* ¶ 8.

When an individual under the age of twenty-one files an INS application with a parent, the individual's status is "derivative" of his parent's application. *See* 8 U.S.C. §§ 1101(b)(1), 1153(d). The advantage of a

derivative application is that, in the queue of applicants, the derivative applicant is placed in the same position as his parent who applied earlier. *See* 8 U.S.C. § 1153(d). When an applicant turns twenty-one years old before his application is processed, however, the applicant no longer qualifies as a derivative applicant, and must re-apply independently as an adult. It is this change in application status, known as "aging out," (Complaint ¶ 7), that commands this Court's attention in the instant case.

According to plaintiffs, Maldonado–Santos was born on November 4, 1975, and thus was in danger of turning twenty-one and aging out before the INS processed his application. *Id.* ¶¶ 6–7. Plaintiffs alleged that they took steps to assure that the INS would consider their applications on or before November 3, 1996, so that Maldonado–Santos would not age out. *Id.* Plaintiffs claimed that they made numerous requests of INS personnel to expedite their applications, and that the INS refused to do so. *Id.* ¶ 10.

Plaintiffs further stated that INS District Directors have the authority to expedite the application process in potential aging out situations, and that the INS has two procedures in place to expedite these sorts of cases. *Id.* ¶¶ 10–13. The first procedure is simply to expedite the applicant's background checks which are a component of the application process. *Id.* ¶ 12. The second procedure plaintiffs allege to be available to the INS is a "post-audit." *Id.* ¶ 13. A post-audit permits the INS to approve an application for status adjustment without previously verifying the applicant's background clearance. (Hearing Transcript *Maldonado–Coronel v. McElroy* 96 Civ. 7848 ("Hearing Tr.") at 9, 11 (Oct. 25, 1996).) If a subsequent background investigation uncovers information that would have precluded the application's approval, the INS is authorized to rescind the status adjustment within five years of its approval. *Id.; see also* 8 U.S.C. § 1256. Plaintiffs assert that the INS commonly uses these procedures to expedite the application process in aging out cases. (Complaint ¶ 14.)

As evidence that defendant has the authority to expedite INS applications, plaintiffs submitted to this Court several items. Plaintiffs point to INS Operations Instruction ("OI") 105.10(c) which provides, in part, that "[w]hen an expeditious response is needed from the FBI or CIA because of an unforeseen emergency or other circumstances indicating a sound basis for urgency, stamp in bright green ink or write with a bright green felt-tipped pen the word 'SPECIAL' in the lower portion of the INS box." (Letter from Robert F. Belluscio, Esq., to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York, *Maldonado–Coronel v. McElroy* 96 Civ. 7848 ("Belluscio Letter") at Exh. 5 (Oct. 23, 1996).)

In addition, plaintiffs offer printed copies of e-mail communications between their counsel and two other private immigration lawyers. The first such attorney, James D. Acoba ("Acoba") of Los Angeles, California, states that, after contacting the INS himself, he learned that "local districts DO have the authority to either request expedited clearances OR to approve on a post-audit basis. Memo is apparently coming out clarifying policy." (Belluscio Letter at Exh. 8. (capitalization in original).) The e-mail conversation with the second immigration lawyer, Michael E. Piston ("Piston") of Troy, Michigan, reads:

[Q.] Anyone have anything in writing or a citation for either: 1. Having District obtain fingerprint clearances on an expedited basis OR 2. Doing an adjustment on a post-audit basis?

[A.] Nothing in writing, but I've done it (once) in Detroit.

[Q.] Thanks for your response. When did you do it? How much time did it take? Hot [sic] much less than 60 days after filing was the case completed?

[A.] It was about 30 days after the prints were sent to the FBI. Basically, my associate simply begged the INS examiner to do it because the principle's [sic] son was aging out. The officer darkly warned of dire consequences if evidence of an excludable crime was received from the FBI but it wasn't.

*Id.* at Exh. 9 (capitalization in original).

Plaintiffs claimed that defendant had "wilfully [sic] refused" to adjudicate their appli-

cations expeditiously in violation of the Act and the Due Process Clause of the Fifth Amendment of the United States Constitution. (Complaint ¶ 11.) They maintained that, if Maldonado–Santos is permitted to age out, he will suffer irreparable harm, specifically, that he would have to seek lawful permanent resident status on his own, a process which plaintiffs allege takes nearly six years. (Complaint ¶ 15); (Hearing Tr. at 20.) In addition, plaintiffs assert that, under the Immigration Reform and Immigrant Responsibility Act of 1996, Maldonado–Santos would be required to leave the United States while his application for lawful permanent resident status is pending or risk heavy sanctions. (Complaint ¶ 15); (Attorney's Certification and Memorandum of Law, *Maldonado–Coronel v. McElroy*, 96 Civ. 7848 ("Plaintiffs' Memo") at 2–3 (Oct. 17, 1996).) Finally, at the hearing, plaintiffs argued that if Maldonado–Santos' application is not expedited and he is forced to re-apply as an adult, Congress may subsequently act to preclude him ever from obtaining permanent lawful resident status. (Hearing Tr. at 20.)

Plaintiffs filed this lawsuit seeking, among other things, that defendant's conduct be declared unlawful and that defendant be ordered to adjudicate plaintiffs' applications on or before November 3, 1996, the day before Maldonado–Santos' twenty-first birthday. (Prayer for Relief *Maldonado–Coronel v. McElroy* 96 Civ. 7848 ("Prayer for Relief") ¶¶ 3–4 (Oct. 11, 1996).) Defendant sought a dismissal of plaintiffs' complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Alternatively, defendant sought an extension of time to prepare additional submissions. (Letter from Special Assistant United States Attorney F. James Loprest, Jr., Esq., to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York, *Maldonado–Coronel v. McElroy*, 96 Civ. 7848 ("Loprest Letter") at 1 (Oct. 21, 1996).) Because time was one thing which this dispute surely lacked, this Court held a hearing and rendered a decision in this case on October 25, 1996.

## DISCUSSION

At the hearing, both parties directed their arguments to defendant's asserted bases for its motions to dismiss: (1) lack of subject matter jurisdiction; and (2) plaintiffs' failure to state a claim upon which relief could be granted.

### I. Subject Matter Jurisdiction

Plaintiffs asserted that this Court had subject matter jurisdiction over this case, pursuant to Title 5, United States Code, Sections 701, *et seq.*, Title 28, United States Code, Section 1361, Title 28, United States Code, Sections 1331, 1343, 2201, and 2202, Title 8, United States Code, Section 1329, as well as Rules 57 and 65. (Complaint ¶ 4.) The INS disputed these asserted bases of jurisdiction, and sought to dismiss the Complaint pursuant to Rule 12(b)(1). (Hearing Tr. at 12, 15–17.) For purposes of resolving the instant motion expeditiously, this Court assumes that it has jurisdiction over the subject matter of plaintiffs' case.

In *Zheng v. Immigration and Naturalization Service*, 933 F.Supp. 338 (S.D.N.Y.1996), a factually similar case, Judge Leisure confronted another "scattershot listing of statutory provisions" purporting to confer jurisdiction over plaintiffs' case. *Id.* at 339. Judge Leisure found it appropriate to assume jurisdiction and to resolve the defendant's motion to dismiss on other grounds. *Id.* at 339. This Court will follow Judge Leisure's lead and will assume that it has jurisdiction over this case for purposes of the INS's motion to dismiss.

■ The Second Circuit has explained the rationale for such a practice in *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152 (2d Cir. 1996). In *Cantor Fitzgerald*, the court stated that

[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case. On some occasions, however, considerations of judicial economy and restraint may persuade the court to avoid a difficult question of subject matter jurisdiction

when the case may be disposed of on a simpler ground.

*Id.* at 155 (citations omitted). A court may rearrange the usual order of the issues to be resolved and assume jurisdiction when it is "convinced that the challenge to the court's subject matter jurisdiction is not easily resolved and that the alternative ground is considerably less difficult to decide." *Id.* (citations omitted).

 It is precisely this situation which confronts this Court. Plaintiffs alleged a blitz of jurisdictional bases for this action. This Court finds that none of these provisions provides an obvious foundation upon which this Court may exercise jurisdiction. For example, Title 28, United States Code, Section 1361 ("Section 1361") provides that "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." 28 U.S.C. § 1361. However, mandamus jurisdiction does not lie to direct the exercise of administrative discretion within its lawful boundaries. *See, e.g., Caribbean Trading and Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.,* 948 F.2d 111, 115 (2d Cir.1991), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). Internal agency procedures are committed to the agency's discretion. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). The process by which the application process for an adjustment of immigration status is conducted is an internal INS procedure and is therefore committed to the INS's discretion. Thus, this Court doubts that Section 1361 authorizes this Court to exercise mandamus jurisdiction over plaintiffs' case. This Court's review of plaintiffs' other asserted bases of subject matter jurisdiction presents similarly difficult questions regarding this Court's power to hear the instant dispute. As a result, this Court will assume it possesses subject matter jurisdiction over the case at bar, and will resolve it on other grounds.

## II. Failure to State a Claim

 In reviewing the pleadings on a motion to dismiss for failure to state a claim, a court looks to the four corners of the complaint and evaluates the legal viability of the allegations contained therein. *See* Fed. R.Civ.P. 12(b)(6); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). As the Second Circuit has stated, the court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980); *see Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 124 (2d Cir.1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of plaintiff's well-pleaded factual allegations. *See Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). In addition, the court must read the complaint generously, and draw reasonable inferences in favor of the pleader. *See LaBounty,* 933 F.2d at 123. A complaint will not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991).

In the case at bar, plaintiffs allege that the INS has the authority to permit the expedition of INS applications in order to prevent applicants from aging out, that the INS has done so in the past, and that, in this instance, the INS has elected not to. (Complaint

¶¶ 11, 14.) Plaintiffs thus seek to have this Court order the INS to expedite their applications. (Prayer for Relief ¶ 4); (Plaintiffs' Memo at 4.)

Plaintiffs raise a number of arguments in support of their claims. First, plaintiffs contend that prevailing case law entitles them to have their INS applications processed expeditiously. (Complaint ¶¶ 11–13); (Plaintiffs' Memo at 1–2.) Second, plaintiffs claim that defendant's refusal to expedite the processing of the applications violates their right to due process under the Fifth Amendment of the United States Constitution. (Complaint ¶ 11.) Third, plaintiffs argue that the consequences Maldonado–Santos will allegedly suffer if permitted to age out are sufficiently dire to justify this Court in ordering defendant to expedite the processing of plaintiffs' applications. (Plaintiffs' Memo at 3); (Hearing Tr. at 20.) Defendant did not respond to all of these arguments, but asserted only that applicable case law offered plaintiffs no basis for relief. (Loprest Letter at 1.) In addition, because plaintiffs' claims implicate this Court's constitutional authority, this Court will briefly address that issue.

### A. Case Law

Case law addressing the subject matter of plaintiffs' case is relatively scarce. Indeed, plaintiffs state that their "[c]ounsel is not aware of any reported decision concerning any similar situation." (Plaintiffs' Memo at 3.) Nevertheless, each party offered this Court a case purporting to support its respective position. Plaintiffs cited *Fano v. O'Neill,* 806 F.2d 1262 (5th Cir.1987), while defendant relied upon *Zheng v. INS,* 933 F.Supp. 338 (S.D.N.Y.1996). In both cases, the INS was sued based on its failure to process a INS application prior to an immigration applicant's aging out. Because this Court's ruling at the hearing largely turned upon its interpretation of these two opinions, each will be discussed at some length.

### 1. *Fano v. O'Neill*

In *Fano,* plaintiff claimed he "lost an opportunity to obtain permanent resident status in this country because the [INS], violating its internal procedures, wilfully [sic]

delayed the processing of his application." 806 F.2d at 1263. Approximately two months prior to his twenty-first birthday, Fano applied for derivative status based on his father's application. *Id.* To avoid aging out, "Fano's attorney urged the INS officer to expedite the handling of Fano's application." *Id.* Fano urged the INS to follow the INS's Operations Instruction ("OI") 245.4(a)(2) which, he claimed, directed the INS to undertake an expedited procedure in his case. *Id.* Fourteen months later, Fano's application was denied because he had aged out. *Id.* The INS never offered any explanation for its delay. *Id.* Fano sued the INS in federal district court, alleging that the INS is bound by its OI and could not deny him the resident status he would have obtained had the OI been followed. *Id.* The district court granted the INS's motion for summary judgment and Fano appealed to the Fifth Circuit. *Id.*

The Fifth Circuit expressly held that the INS's violation of its own internal procedures did not afford Fano a remedy. *Id.* at 1264. The *Fano* court reasoned that, "this circuit has on at least three occasions concluded that the INS OIs do not have the force of law." *Id.* (citing *Ponce–Gonzalez v. INS,* 775 F.2d 1342, 1346 (5th Cir.1985); *Dong Sik Kwon v. INS,* 646 F.2d 909, 918–19 (5th Cir.1981); *Soon Bok Yoon v. INS,* 538 F.2d 1211, 1213 (5th Cir.1976)). OIs do not confer judicial remedies upon individuals "because they are not an exercise of delegated legislative power and do not purport to be anything other than internal housekeeping measures." *Id.* (citation omitted).

Nevertheless, the Fifth Circuit reversed the district court's grant of summary judgment to the INS. The Fifth Circuit found that a question of material fact existed regarding whether the INS could be estopped from finding that Fano had aged out because it was the INS's delay which prevented Fano's application from being processed prior to his twenty-first birthday. *Id.* at 1265. To state a cause of action for estoppel against the government, the *Fano* court held that "a private party must allege more than mere negligence, delay, inaction, or failure to follow an agency guideline." *Id.* Fano's

complaint alleged that the INS had "willfully, wantonly, recklessly and negligently" delayed in processing his application in violation of its OI and its usual practice. *Id.* at 1266. In support of its motion for summary judgment, the INS had argued only that Fano had failed to show any evidence in support of his allegations. *Id.* To resist summary judgment, however, Fano was not required to prove his allegations. *Id.* Because the INS failed to carry its burden of persuasion, the Fifth Circuit reversed the district court's grant of summary judgment to the INS. *Id.*

Although the Fifth Circuit in *Fano* plainly held that INS internal procedures do not confer substantive rights upon individuals, *id.* at 1264, the Second Circuit's position on this issue is not quite as clear. It is well established that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). However, "not all agency publications are of binding precedent." *Lyng v. Payne,* 476 U.S. 926, 937, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986). The Second Circuit has interpreted *Morton* to require the INS to follow its own regulations when the "regulations were for the alien's benefit." *Zhang v. Slattery,* 840 F.Supp. 292, 294 (S.D.N.Y.1994) (*quoting Montilla v. INS,* 926 F.2d 162, 169 (2d Cir.1991) (holding that the INS must adhere to the requirements of 8 C.F.R. § 242.10, which governs the manner in which an alien must be informed of his right to counsel at a deportation hearing)). The Second Circuit, however, has not considered whether an agency must adhere to internal directives which are not promulgated as Federal Regulations. *Zhang,* 840 F.Supp. at 294–95.

■ To reiterate, plaintiffs in the instant case alleged simply that the INS elected to follow one internal procedure for applications for status adjustment rather than another, and that the INS failed expeditiously to process plaintiffs' applications even though expedited processing can be, and has been, utilized in similar cases. Although plaintiffs cite several authorities that allegedly support their claim, they cite no INS OI—let alone a Federal Regulation—which expressly mandates or authorizes expedited processing of status adjustment applications to avoid an applicant's aging out. For example, OI 105.10(c) states that, when an expeditious background clearance is needed from the FBI or CIA, the INS is to write or stamp "SPECIAL" in bright green ink on the applicant's paperwork. (Belluscio Letter at Exh. 5.) This Court finds that OI 105.10(c) simply cannot be construed to direct the INS expeditiously to process all potential age-out applications.

The e-mail communications offered by plaintiffs are similarly lacking in authority for plaintiffs' contentions. As previously stated, plaintiffs cite these e-mails to show that the INS can, and has, expedited applications in age out situations. *Id.* at Exhs. 8 & 9. The e-mails, however, are merely informal correspondence among professional colleagues, and thus cannot confer a substantive or procedural right upon which plaintiffs are entitled to rely. These e-mails implicitly recognize this. In the first e-mail, Acoba concedes that the INS has issued no written statement of its alleged expedition procedures by stating that an INS "[m]emo is apparently coming out clarifying [INS] policy" in impending age out situations. *Id.* at Exh. 8. In the second e-mail, Piston states that he has "[n]othing in writing" regarding INS expedition procedures, and that he succeeded in his effort to have the Detroit INS expedite an application of one of his clients because his "associate simply begged the INS examiner to do it.". *Id.* at Exh. 9. An unwritten INS expedition policy—if in fact one even exists—cannot carry the weight of a Federal Regulation or an OI. Moreover, badgering an INS official, while apparently effective in one instance, does not establish a formal INS internal procedure upon which plaintiffs in this case can base their claim for relief.

■ Nevertheless, whether by accident or by design, plaintiffs alleged in their Complaint that defendant *"wilfully* [sic] refused and continues to refuse to process expeditiously their applications." (Complaint ¶ 11 (emphasis added).) Because *Fano* turned largely upon a similar wording of that plaintiff's complaint and supporting allegations,

806 F.2d at 1266, this Court considers whether the instant plaintiffs' inclusion of the word "willfully" in their complaint permits them to survive defendant's motion to dismiss. Because there are two crucial differences between *Fano* and the case at bar, this Court finds that it does not.

First, in *Fano*, it was the INS's unexplained fourteen month delay which prompted the Fifth Circuit's finding that the INS may have engaged in "willful, reckless and wanton" conduct. *Id.* Here, plaintiffs filed their applications less than one month before they instituted this litigation. It normally takes 120 days for the INS to obtain fingerprint clearance alone. (Plaintiffs' Memo at 2.) This Court thus finds that no delay can be attributed to defendant in this case. Accordingly, the INS's culpability in the two cases simply cannot be equated.

Second, and more importantly, the Fifth Circuit's determination that plaintiff in *Fano* could survive the INS's summary judgment motion was based solely on plaintiff's estoppel claim. *Id.* at 1264–66. To reiterate, Fano had argued that, because his aging out was caused by the INS's failure to follow its own procedures, the INS was estopped from relying on the fact that Fano was no longer a minor in refusing to approve his derivative application for status adjustment. *Id.* at 1264. In the case at bar, plaintiffs make no estoppel argument, as indeed they cannot, because Maldonado–Santos has not yet been harmed by the INS's decision not to expedite his application. Thus, although *Fano*'s outcome is seemingly favorable to the instant plaintiffs, it rested upon grounds distinct from those at bar, and consequently is not persuasive authority. Accordingly, this Court finds that plaintiffs' case-law-based claim that the INS should have expeditiously processed their applications is meritless and should be dismissed.

### 2. *Zheng v. INS*

*Zheng*, the decision cited by defendant, also deals with an INS applicant who had aged out despite his efforts to expedite the disposition of his application. 933 F.Supp. at 338–341. When plaintiff in *Zheng* applied for adjustment of his immigration status, he was informed by the INS that it would take approximately sixty days to process his application because the INS must conduct fingerprint identification checks through the Federal Bureau of Investigation ("FBI") for all individuals over sixteen years of age who are seeking to adjust their immigration status. *Id.* at 339 (*citing* 8 U.S.C. § 1255 note 1994). In an effort to expedite his application, Zheng paid a fee to the FBI to obtain a copy of his FBI report. *Id.* Zheng's FBI report indicated that he had no arrest record. *Id.* Zheng had a copy of his FBI report delivered to the INS prior to his twenty-first birthday. *Id.* The INS, however, would not accept this report as satisfying its statutory requirement for FBI clearance. *Id.* Shortly thereafter Zheng turned twenty-one and aged out. *Id.* Zheng then brought an action in the United States District Court for the Southern District of New York seeking to have declared unlawful the INS's refusal to consider the FBI report he submitted. *Id.* The INS brought a motion to dismiss. *Id.*

In granting the INS's motion to dismiss, Judge Leisure relied almost exclusively upon the deference with which the judiciary must treat determinations made by the executive and legislative branches of government in the area of immigration. *Id.* at 340 (*citing Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977)). Judge Leisure explained that it is not the judiciary's role "to revamp the procedural system of the INS." *Zheng*, 933 F.Supp. at 340. Judge Leisure also distinguished *Zheng* from *Fano*: in *Fano*, plaintiff alleged "willful, wanton, and reckless conduct" by the INS for which the INS offered no explanation, while plaintiffs' complaint in *Zheng* contained no allegations of such conduct. *Id.* at 341. Judge Leisure concluded that "[t]he fact that the INS followed a procedure, dictated by statute, of waiting for clearance from the FBI does not amount to a wanton, willful, and reckless delay." *Id.*

Plaintiffs in the instant case attempt to distinguish themselves from plaintiff in *Zheng*. They argue that plaintiff in *Zheng* asked Judge Leisure to "fashion a new remedy," and assert that they seek only an order requiring the INS to utilize an existing expe-

dition procedure. (Belluscio Letter at 1); (Hearing Tr. at 11.) Specifically, plaintiffs suggest that this Court order the temporary waiver of the FBI background clearance of Maldonado–Santos, (Complaint ¶ 13), on the grounds that the INS can post-audit Maldonado–Santos and rescind its approval of his application under Title 8, United States Code, Section 1256. (Belluscio Letter at Exh. 10.) In response, defendant claims that the relief plaintiffs seek in the instant case is in some ways more extreme than that sought in *Zheng.* (Hearing Tr. at 13–14.)

To reiterate, plaintiff in *Zheng* sought an order declaring unlawful the INS's refusal to use the FBI report that Zheng submitted instead of the one the INS would later obtain itself. *Zheng,* 933 F.Supp. at 339. Plaintiffs in the instant case go one step further, and suggest that this Court waive Maldonado–Santos' FBI background check, subject only to a post-audit after his application is approved. However, as Judge Leisure noted in *Zheng,* "[t]he purpose of the background check is to ascertain that an applicant does not have a criminal record. It is not realistic to expect that those who do in fact have such records will not attempt to submit fraudulent documentation." 933 F.Supp. at 341. Indeed, it recently has come to light that a substantial number of individuals with criminal histories may have slipped through the INS's vetting procedures. *See* David Johnston, *I.N.S. Chief Plays Down Fear that Many Criminals Got Citizenship,* N.Y.Times, Oct. 30, 1996, at A15. This Court finds it imprudent to create another loophole to the INS's statutory mandate to conduct FBI background checks simply because time is short. This Court is loathe to provide those with criminal histories another backdoor to obtaining lawful residency in this country. If the INS chooses to exercise its discretion and utilize such a procedure, that is its prerogative. In the absence of such an exercise of discretion, however, this Court will not substitute its judgment for that of the administrative agency charged by Congress with overseeing the immigration process. Thus, this Court finds that defendant's reliance on *Zheng* is well-placed, and that plaintiffs' claim that they are entitled to expedited processing of their applications should be dismissed.

## B. Due Process

Plaintiffs claim that the INS's refusal to expedite the processing of their applications deprived them of due process under the Fifth Amendment of the United States Constitution. (Complaint ¶ 11.) Neither party submitted argument to this Court regarding this issue. However, this Court's research indicates that immigration policy in the United States need not conform—and historically has not conformed—to the constitutional safeguards applicable to American citizens. *See Rahman,* 884 F.Supp. at 785; *Matter of Longstaff,* 716 F.2d 1439, 1442 (5th Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984). "Congress can bar aliens from entering the United States for discriminatory and arbitrary reasons, even those [reasons] that might be condemned as a denial of equal protection or due process if used for purposes other than immigration policy to draw distinctions among people physically present within the borders of the United States." *Longstaff,* 716 F.2d at 1442 (footnote omitted). The constitutional requirements of

> due process and of nondiscrimination exacted by the equal protection component of the due process clause do not limit the federal government's power to regulate either immigration or naturalization. Thus, the Constitution does not require our national immigration policy to be consistent with the prohibition of discrimination by federal agencies and by state governments and private persons.

*Id.* (footnotes omitted). Neither plaintiffs' submissions nor their oral arguments address these principles, and this Court sees no reason to depart from them here. As a result, this Court finds that defendant did not violate plaintiffs' Fifth Amendment due process rights, and that this claim should be dismissed.

## C. Harsh Consequences

Finally, plaintiffs argue that the consequences of the INS's refusal to expedite their applications are sufficiently dire as to

justify this Court in ordering the INS to expedite their applications. First, plaintiffs claim that if Maldonado–Santos is permitted to age out, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") would require him to leave the United States during his reapplication period. (Plaintiffs' Memo at 3.) It is unclear whether this assertion is true. However, this Court need not consider the accuracy of plaintiffs' characterization of the IIRIRA to find their argument flawed. The mere fact that the consequences of Maldonado–Santos' aging out are dire does not empower this Court to intrude upon an area committed to the INS's discretion. Moreover, if Congress, in exercising its extraordinary power over immigration, *see, e.g., Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977), has determined that individuals such as Maldonado–Santos are to apply for residency from abroad, it is not for this Court to say otherwise.

██ Second, plaintiffs assert that if Maldonado–Santos' application is not processed immediately, Congress might eliminate sponsorships of adult children, thus rendering it impossible for Maldonado–Santos to obtain legal, permanent residency in the United States. (Hearing Tr. at 20.) This claim is purely speculative, and consequently, is unripe for judicial determination. *See, e.g., O'Shea v. Littleton,* 414 U.S. 488, 497–98, 94 S.Ct. 669, 676–77, 38 L.Ed.2d 674 (1974). Additionally, as with plaintiffs' IIRIRA argument, simply because the consequences of an INS decision or an immigration statute are harsh does not, without more, create a cause of action for those adversely affected by such a decision or statute. Accordingly, this Court finds that plaintiffs' argument based on the alleged harm to Maldonado–Santos from defendant's refusal to expedite the processing of plaintiffs' applications should be dismissed.

## D. Separation of Powers

An additional issue raised in this case, but which neither party addressed in its respective submission or oral argument, is the proper role of the courts in reviewing INS procedures and determinations. Nonethe-

less, this Court's own research regarding this issue finds that plaintiffs' request for an order expediting their application asks this Court to overstep its authority in three separate respects, all of which implicate our constitutional system of shared powers.

██ First, the statute authorizing Maldonado–Coronel's application for status adjustment reads:

> The status of an alien who was inspected or admitted or paroled into the United States may be adjusted by the Attorney General, *in his discretion and under such circumstances as he may prescribe,* to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added). When courts review action statutorily committed to an administrative agency's discretion, they are to "hold unlawful and set aside action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (quotation omitted). Courts must give substantial deference to an agency's interpretation of its own regulations. *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991). Reviewing courts are not to decide which of several competing interpretations is correct. *Thomas Jefferson Univ.,* 512 U.S. at ——, 114 S.Ct. at 2386. Rather, "the agency's interpretation is to be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Bowles v. Seminole Rock and Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). When a court intrudes upon an agency's discretion, the court oversteps its authority and "runs the risk of propel[ling] [itself] into the domain which Congress has set aside exclusively for the administrative agency." *FPC v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326,

333, 96 S.Ct. 579, 583, 46 L.Ed.2d 533 (1976) (per curiam) (*quoting SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)).

In the case at bar, the adjustment of Maldonado–Coronel's immigration status is statutorily committed to the Attorney General and, by extension, to the INS as a division of the Justice Department. In this instance the INS elected to follow its usual application procedure rather than the expedited procedures plaintiffs allege to exist. Because, as even plaintiffs concede, the INS simply chose one of two proper procedures, (Hearing Tr. at 8–9). This Court cannot find that the INS's exercise of discretion was "plainly erroneous."

Second, courts have little power to shape an administrative agency's internal procedures. Rather, the formulation of internal agency procedures is "basically left within the discretion of the agencies to which Congress ha[s] confided the responsibility for substantive judgments." *Vermont Yankee Nuclear Power Corp.,* 435 U.S. at 524, 98 S.Ct. at 1202. "Absent constitutional constraints or extremely compelling circumstances, the administrative agencies should be free to fashion their own rules of procedure ... permitting them to discharge their multitudinous duties." *Id.* (internal quotations omitted). "Reviewing courts have therefore been cautioned 'against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress.'" *Rahman v. McElroy,* 884 F.Supp. 782, 787 (S.D.N.Y.1995) (*quoting Vermont Yankee Nuclear Power Corp.,* 435 U.S. at 525, 98 S.Ct. at 1202). As previously discussed, in the instant case this Court finds no circumstances sufficiently compelling to justify imposing its will upon the INS's internal practices.

Third, and perhaps most importantly, "[j]udicial review in matters pertaining to immigration ... is narrowly circumscribed." *Zheng,* 933 F.Supp. at 340 (citations omitted). Immigration is a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977)

(citation omitted); *see also Landon v. Plasencia,* 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982) (control over immigration is a "sovereign prerogative"); *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 1904 n. 21, 48 L.Ed.2d 495 (1976) ("the power over aliens is of a political character and therefore subject only to narrow judicial review"); *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909) ("over no conceivable subject is the legislative power of Congress more complete" than the processing of immigrants). Accordingly, this Court will not instruct the INS—the agency charged with implementing Congress' will in matters of immigration—on how best to handle applicants in danger of aging out.

As a result, this Court finds that plaintiffs "can prove no set of facts in support of their claim" on any of the grounds previously discussed. This Court thus finds that plaintiffs' complaint has failed to state a claim upon which relief can be granted, and that defendant's motion to dismiss pursuant to Rule 12(b)(6) should be granted.

### CONCLUSION

IT IS HEREBY ORDERED THAT defendant's motion to dismiss is GRANTED.

IT IS FURTHER ORDERED THAT plaintiffs' complaint is DISMISSED.

SO ORDERED.